1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11   Moofly Productions, LLC,        )   CV 13-5866 RSWL (PJWx)
                                      )
12                  Plaintiff,        )
          v.                          )   **Order re: Counter-**
13                                    )   **Claimants' Motion to**
     Sandra Favila, an               )   **Strike Answer Filed on**
14   individual; Estate of           )   **Behalf of Counter-**
     Richard C. Corrales; and        )   **Defendant Get Flipped,**
15   Does 1 through 10,               )   **Inc. [18]**
     inclusive,                       )
16                                    )
                                      )
17                  Defendants.       )
                                      )
18                                    )
                                      )
19   _____)

20        Before the Court is Defendants and Counter-

21   Claimants' Sandra Favila ("Favila"), Estate of Richard

22   C. Corrales ("Corrales Estate") (collectively

23   "Defendants"), and Motion Graphix, Inc.'s ("MGI")

24   (collectively "Counter-Claimants") Motion to Strike

25   Answer Filed on Behalf of Counter-Defendant Get

26   Flipped, Inc. [18].  Counter-Defendants Raleigh William

27   Souther ("Souther"), Helena Pasquarella

28   ("Pasquarella"), and Moofly Productions, LLC ("Moofly")

1  (collectively, the "responding Counter-Defendants")
2  filed an Opposition on October 29, 2013 [21].  This
3  matter was taken under submission on November 14, 2013
4  [28].  Having reviewed all papers submitted pertaining
5  to the Motion, and having considered all arguments
6  presented to the Court, the Court **NOW FINDS AND RULES**
7  **AS FOLLOWS:**

8       Counter-Claimants' Motion to Strike is hereby
9  **GRANTED.**

## I.  Background

11      Plaintiff and Counter-Defendant Moofly is a
12  California LLC.  First Amended Compl. ("FAC") ¶ 1.
13  Counter-Defendants Souther and Pasquarella are the
14  trustees and settlors of Counter-Defendant Kiss of
15  Light Trust ("KOL").  First Amended Cross-Compl.
16  ("FACC") at ¶ 4-5.  Counter-Defendant Get Flipped, Inc.
17  ("GFI") is a California corporation.  Id. ¶ 7.

18      Plaintiff Moofly is in the business of selling
19  products and services related to lenticular images -
20  three dimensional images.  FAC ¶ 10.  Moofly alleges
21  that on October 11, 2012 Defendants Favila and Corrales
22  Estate sent a letter to Ayala High School, Moofly's
23  client, making false and unsubstantiated statements
24  that, *inter alia*, Moofly was infringing Defendants'
25  intellectual property and that those who transacted
26  with Moofly were liable to Defendants.  Id. at ¶ 11.
27  Moofly further alleges that Defendants have wrongfully
28  contacted Moofly's clients, prospective clients, and

1    employees in an effort to divert profits and business
2    away from Moofly and to Defendants.  Id. at ¶ 13.

3        Based on this, Plaintiff Moofly brought the current
4    Action in California Superior Court against Defendants
5    for: (1) Intentional Interference with Prospective
6    Economic Advantage; (2) Intentional Interference with
7    Present Contractual Relations; (3) Unfair Competition
8    under Cal. Bus. & Prof. Code § 17200 et seq.; and (4)
9    Unfair Competition under Cal. Bus & Prof. Code § 17000
10   et seq.  Id. at ¶¶ 17-55.

11       Cross-Complainants, in turn, claim that Richard C.
12   Corrales ("Corrales") was a Pulitzer Prize winning
13   photographer for the Los Angeles Times who invented
14   lenticular software, which merges two or more
15   photographs into one to allow viewers to see different
16   photographs depending on the angle of observation.
17   FACC ¶¶ 12-13.  Cross-Complainants allege that Souther
18   worked with Corrales at the Los Angeles Times as a
19   photo editor and that they founded MGI together,
20   Corrales as the 51% majority shareholder and Souther as
21   the 49% minority shareholder.  Id. at ¶ 14.  Between
22   August 10, 2001 and September 7, 2003, Corrales,
23   Souther, and MGI obtained various patents, copyrights,
24   and trademarks relating to lenticular software.  Id. at
25   ¶¶ 15-20.  MGI either obtained the rights directly or
26   was assigned the rights by Corrales.  Id.  From 2000 to
27   2007, MGI used these rights in its business.  Id. at ¶
28   21.

1    In January 2005, Corrales and Souther had
2  disagreements over their respective roles in the
3  company.  Id. at ¶ 22.  Counter-Claimants allege that
4  in June 2005, Souther began doing business exploiting
5  MGI's copyrights and trademarks under the name "Get
6  Flipped," even though MGI owned the trademark for "Get
7  Flipped."  Id. at ¶ 23.  Souther also registered a
8  copyright for a website entitled "Get Flipped!."  Id.
9  at ¶ 24.  Corrales died in 2005 and his sister, Favila,
10 was appointed the executrix of his estate.  Id. at ¶
11 25.  In February 2006, Souther decided to dissolve MGI
12 and to transfer its assets to his new company, Get
13 Flipped, Inc.  Id. at ¶ 26.  In March, 2006, Souther
14 and Pasquarella founded Get Flipped, Inc. and, later
15 that year, caused Get Flipped, Inc. to file
16 registrations for two trademarks already held by MGI:
17 "Flip Zone" and "Get Flipped."  Id. at ¶¶ 29-31.  In
18 2006, Souther caused MGI to abandon its patent
19 applications with the USPTO.  Id. at ¶ 28.  In February
20 2007, Souther purported to have MGI sell all of its
21 assets, including MGI's intellectual property, to Get
22 Flipped, Inc. for no consideration and without the
23 consent of its majority shareholder.  Id. at ¶ 32.  In
24 March 2007, Souther caused Get Flipped, Inc. to
25 register the assignment of MGI's various copyrights and
26 trademarks in Get Flipped, Inc.'s name.  Id. at ¶ 33.
27 Souther then purported to dissolve MGI.  Id. at ¶ 34.
28    On October 30, 2007, the Corrales Estate brought a

4

lawsuit in California state court, case number BC379462, against Souther and Get Flipped, Inc., which resulted in a judgment for the Corrales Estate against Souther and Get Flipped, Inc. (the "Souther/Corrales Judgment"). Id. at ¶¶ 37-38. The Souther/Corrales Judgment included, among other things, an award of all software code, trademarks, copyrights, and patents related to the software from Souther and Get Flipped, Inc. to the Corrales Estate. Id. at ¶ 40. Counter-Claimants further allege that to date, neither Souther nor Get Flipped, Inc. has complied with any of the judgment terms and Souther has explicitly stated his intent to not cooperate with the terms of the judgment. Id. at ¶¶ 42-44. Instead, Souther and Pasquarella established a new website and began doing business under the name "3DCheeze" through their newly formed entity, Plaintiff Moofly. Id. at ¶¶ 45-50. Counter-Claimants allege that to date, Souther and Pasquarella have continued to use MGI's intellectual property even though those properties belong to the Corrales Estate. Id. at ¶¶ 51-52.

Based on this, Counter-Claimants filed a Counter-Complaint against Counter-Defendants in California State Court for: (1) Fraudulent Transfer; (2) Conversion; (3) Federal Copyright Infringement; (4) Federal Trademark Infringement; (5) Unfair Competition under the Lanham Act, Cal. Bus. & Prof. Code § 17200 et seq. and the common law; (6) Fraudulent Transfer; (7)

1  Unjust Enrichment; and (8) for Preliminary and

2  Permanent Injunctions.  Id. at ¶¶ 56-111.  Counter-

3  Claimants then proceeded to remove this Action on

4  August 12, 2013 [1].

5                    **II.  Legal Standard**

6       Under Federal Rule of Civil Procedure 12(f), the

7  Court may, by motion or on its own initiative, strike

8  "an insufficient defense or any redundant, immaterial,

9  impertinent or scandalous" matters from the pleadings.

10 The purpose of Rule 12(f) is "to avoid the expenditure

11 of time and money that must arise from litigating

12 spurious issues by disposing of those issues prior to

13 trial."  Whittlestone, Inc. v. Handi-Craft Co., 618

14 F.3d 970, 973 (9th Cir. 2010) (quoting Fantasy, Inc. v.

15 Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993)).

16      The grounds for a motion to strike must appear on

17 the face of the pleading under attack.  See SEC v.

18 Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995).  In

19 addition, the Court must view the pleading under attack

20 in the light more favorable to the pleader when ruling

21 upon a motion to strike.  In re 2TheMart.com, Inc. Sec.

22 Litig, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)

23 (citing California v. United States , 512 F. Supp. 36,

24 39 (N.D. Cal. 1981)).  As a rule, motions to strike are

25 regarded with disfavor because striking is such a

26 drastic remedy; as a result, such motions are

27 infrequently granted.  Freeman v. ABC Legal Servs.,

28 Inc., 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012).

1  //

2  //

3                    **III.   Discussion**

4  **A.   <u>Motion to Strike</u>**

5       Under Federal Rule of Civil Procedure 17(b)(2), the

6  "[c]apacity to sue or to be sued is determined" for

7  corporations "by the law under which [the corporation]

8  is organized."  Fed. R. Civ. P. 17(b)(2).  Counter-

9  Defendant GFI is registered under California law - as a

10 result, California law applies.  FACC ¶ 7.

11      Under California Revenue & Tax Code § 23301 and

12 California Corporations Code § 2205, a suspended

13 corporation cannot prosecute or defend an action in

14 California court.  <u>Crestmar Owners Ass'n v. Stapakis</u>,

15 157 Cal. App. 4th 1223, 1230 (2007); <u>Timberline, Inc.</u>

16 <u>v. Jaisignhani</u>, 54 Cal. App. 4th 1361, 1365 (1997).  In

17 other words, a suspended California corporation may not

18 participate in any litigation activities.  <u>Palm Valley</u>

19 <u>Homeowners Ass'n v. Design MTC</u>, 85 Cal. App. 4th 553,

20 560-61 (2000).

21      Counter-Claimants and the responding Counter-

22 Defendants agree that Counter-Defendant GFI is

23 suspended.  <u>See</u> Mot. 3:11-12; Opp'n 3:5-6.  The

24 responding Counter-Defendants' primary argument is that

25 because the Souther/Corrales Judgment imposed a

26 constructive trust on Counter-Defendant GFI's assets,

27

28

1  GFI's ownership is currently ambiguous and in dispute.[1]
2  Opp'n 3:14-21.

3       Counter-Defendants are correct in that leniency is
4  routinely given in situations where the corporation's
5  suspended status "only comes to light during
6  litigation." <u>Timberline</u>, 54 Cal. App. 4th at 1366.  In
7  such situations, the routine practice is to "permit a
8  short continuance to enable the suspended corporation
9  to effect reinstatement." <u>Id.</u>  This is so because
10 "[t]he suspension statutes are not intended to be
11 punitive;" rather, they are intended "to motivate
12 delinquent corporations to pay back taxes or file
13 missing statements." <u>Cadle Co. v. World Wide</u>
14 <u>Hospitality Furniture, Inc.</u>, 144 Cal. App. 4th 504, 512
15 (2006) (citations omitted).  Thus, "[l]eniency permits
16 a delinquent corporation to secure a revivor, even at
17 the time of the hearing, at the request of the
18 corporation or on the trial court's own motion." <u>Id.</u>
19 (citations omitted).

20      The Court finds, however, that even assuming that a
21 constructive trust was imposed on Defendant GFI's
22 assets, such a constructive trust would not include

23 _____

24      [1] Counter-Defendants allude to pleadings in state
25 court and correspondence between Counter-Claimants and
   Counter-Defendants where Counter-Claimants allegedly
26 take differing positions on their ownership of Counter-
   Defendant GFI.  <u>See</u> Opp'n 3:14-21.  The Court notes,
27 however, that Counter-Defendants fail to produce or
   specify the allegedly inconsistent pleadings and
28 correspondences.

ownership of the GFI entity.  No fair reading of the
Souther/Corrales Judgment would remotely suggest that
the constructive trust awarded the Corrales Estate
ownership of Counter-Defendant GFI - the
Souther/Corrales Judgment does not, for example,
despite an exhaustive listing of assets, specify *any*
ownership interest in Counter-Defendant GFI.  See Dkt.
#2, Ex. 1, p.2.

Furthermore, there is, of course, a critical and
crucial distinction between the property and assets (or
the "capital stock") of a corporation and the shares of
a corporation.  The capital stock of a corporation
means "not the shares of which the nominal capital is
composed, but the actual capital–i.e., assets–with
which the corporation carries on its corporate
business."  Schulte v. Boulevard Gardens Land Co., 164
Cal. 464, 468 (1913).  In contrast, the "shares" of a
corporation are "the units into which the proprietary
interests in a corporation are divided in the
articles."  Cal. Corp. Code § 184.  In other words,
"shares are the interest that the shareholder has in
the corporation."  9 Witkin, Summary 10th (2005)
Corporations, § 123, p. 898 (citing Kohl v. Lilienthal,
81 Cal. 378, 385 (1889)).  The difference between
owning the assets and owning the shares of a
corporation is a fundamental - and basic - legal
concept.

In other words, this is not a case like Design Data

1  <u>Corp. v. Unigate Enter.</u>, where the court stayed the

2  case as to two suspended-corporation defendants.  Case

3  No. 12-cv-04131-WHO, 2013 U.S. Dist. LEXIS 132161 (N.D.

4  Cal. Sep. 12, 2013).  In that case, the plaintiff filed

5  a motion to strike the answers of two suspended-

6  corporation defendants.  <u>Id.</u> at *2.  The other

7  defendants opposed the motion, but specified that they

8  believed one of the suspended corporations had been

9  dissolved earlier and that the other, while suspended,

10  currently had an application pending to revive its

11  corporate status.  <u>Id.</u> at *2-3.  The other defendants

12  requested a stay until they could revive one suspended-

13  corporation defendant and determine why the other had

14  not yet been legally dissolved.  <u>Id.</u> at *3.  The court

15  granted the stay for two reasons: first, the court

16  noted that these defendants did not assert an

17  affirmative corporate right or privilege with knowledge

18  that the corporate status had been suspended and,

19  second, because a default would likely be set aside

20  once the suspended-corporation defendants' statuses

21  were resolved.  <u>Id.</u> at *4-6.

22      Such is not the case here.  First, Counter-

23  Defendants have not indicated what steps, if any, they

24  have taken to revive Counter-Defendant GFI, or if they

25  intend to do so.  To the extent that Counter-Defendants

26  are taking the position that Counter-Defendant GFI's

27  ownership is ambiguous and contested, such a position

28  is entirely without merit given the plain language of

1 the Souther/Corrales Judgment and the legal distinction
2 between corporate assets and shares.

3    Second, even assuming, *arguendo*, that Counter-
4 Defendants are correct in that Counter-Claimants *are*
5 the current owners of Counter-Defendant GFI, that would
6 still not supply a reason to deny this Motion.  Not
7 only have Counter-Claimants not indicated any desire to
8 revive Counter-Defendant GFI, but such a situation
9 would still not supply good cause for setting aside a
10 default.  Indeed, if Counter-Claimants in fact did own
11 GFI, it would be nonsensical for Counter-Claimants to
12 seek entry of default against, to set aside a default
13 as to Counter-Defendant GFI, or to try to collect from
14 their own corporation.

15    As a suspended corporation, Counter-Defendant GFI
16 cannot, and could not, participate in this litigation.
17 As a result, its Answer is, on its face, legally
18 insufficient.  It is therefore appropriate for this
19 Court to strike Counter-Defendant GFI's Answer.
20 Moreover, the Court finds that the responding Counter-
21 Defendants have failed to provide any coherent reason
22 to deny Counter-Claimants' Motion.  As a result, the
23 Court **GRANTS** Counter-Claimants' Motion to Strike Answer
24 on Behalf of Counterclaim Defendant Get Flipped, Inc.
25 [18].

26 **B.  Request for Entry of Default**

27    Counter-Claimants also request that this Court
28 enter default against Counter-Defendant GFI.  Mot.

1  6:16-20.

2      Pursuant to Federal Rule of Civil Procedure 55(a),

3  "[w]hen a party against whom a judgment for affirmative

4  relief is sought has failed to plead or otherwise

5  defend, and that failure is shown by affidavit or

6  otherwise," default may be entered.  Fed. R. Civ. P.

7  55(a).  A Defendant must file a responsive pleading

8  within 21 days after being served with the summons and

9  Complaint.  Fed. R. Civ. P. 12(a)(1)(A).  As this Court

10 has stricken Counter-Defendant GFI's Answer, it also

11 enters default against Counter-Defendant GFI.

12     Accordingly, the Court **GRANTS** Counter-Claimants'

13 request for this Court to enter default against

14 Counter-Defendant GFI.

15 **C.   Request for Sanctions**

16     Counter-Claimants include in their Reply a request

17 for sanctions against Counter-Defendants and Counter-

18 Defendants' counsel.  Reply 6:18-7:3.  To the extent

19 that Counter-Claimants seek sanctions against Counter-

20 Defendants, they have failed to specify the grounds

21 under which sanctions are warranted.  To the extent

22 that Counter-Claimants are seeking sanctions pursuant

23 to Federal Rule of Civil Procedure 11, that Rule

24 requires that a "motion for sanctions [] be made

25 separately from any other motion and [] describe the

26 specific conduct that allegedly violates Rule 11(b)."

27 Fed. R. Civ. P. 11(c).  To the extent that Counter-

28 Claimants seek sanctions under 28 U.S.C. § 1927 for

1  vexatious or unreasonable multiplication of the

2  proceedings, such sanctions "must be supported by a

3  finding of subjective bad faith."  New Alaska Dev.

4  Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir.

5  1989).

6      As a result, the Court hereby **DENIES** Counter-

7  Claimants' request for sanctions.

8                    **IV.   Conclusion**

9      For the foregoing reasons, the Court hereby **GRANTS**

10  Counter-Claimants' Motion to Strike Answer Filed on

11  Behalf of Counterclaim Defendant Get Flipped, Inc.

12  [18].  The Court hereby **ORDERS** that the Answer filed on

13  behalf of Counter-Defendant GFI be stricken from the

14  record.  The Court also **ORDERS** that the Clerk shall

15  enter default against Counter-Defendant GFI.

16

17  **IT IS SO ORDERED.**

18  DATED: November 25, 2013

19

20                         RONALD S.W. LEW

21                         **HONORABLE RONALD S.W. LEW**
                           Senior U.S. District Judge

22

23

24

25

26

27

28

                              13