| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority _____<br>Send _____<br>Enter _____<br>Closed _____<br>JS-5/JS-6 _____<br>Scan Only _____ |
|---|---|---|

**CASE NO.:** CV 13-05866 SJO (PJWx)     **DATE:** July 13, 2015

**TITLE:** Moofly Productions, LLC v. Sandra Favila, et al.

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                          Not Present
Courtroom Clerk                                         Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**          **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                               Not Present

========================================================================
**PROCEEDINGS (in chambers):  ORDER DISMISSING DEFENDANTS'/COUNTER-CLAIMANTS THE CORRALES PARTIES' COPYRIGHT INFRINGEMENT COUNTERCLAIM FOR FAILURE TO STATE A CLAIM; REMANDING REMAINING CLAIMS AND COUNTER-CLAIMS TO THE SUPERIOR COURT FOR THE COUNTY OF LOS ANGELES; DENYING THE JOEL PARTIES' MOTION FOR SANCTIONS** [Docket No. 237]; **DECLINING TO ADOPT MAGISTRATE JUDGE WALSH'S REPORT AND RECOMMENDATION** [Docket No. 196]; **DENYING THE JOEL PARTIES' REQUEST FOR RETENTION OF JURISDICTION FOR THEIR REQUEST FOR DECLARATORY RELIEF** [Docket No. 228]

This Order responds to numerous motions, pleadings, and other filings pending before the Court[1], specifically: (1) Defendants'/Counter-Claimants' motion for sanctions against Plaintiff and Counter-Defendants for failure to comply with court orders regarding discovery (ECF No. 125) and Magistrate Judge Patrick J. Walsh's ("Judge Walsh") corresponding Report and Recommendation ("Report" or "R&R") recommending that the Court, among other things, dismiss Plaintiff's complaint (ECF No. 196); (2) Counter-Defendants' Thomas Joel ("Joel") and Joel Media Group (together, the "Joel Parties") motion ("Motion") and reply ("Reply") for summary adjudication and summary judgment as to Defendants'/Counter-Claimants' copyright and trademark infringement counterclaims (ECF Nos. 144, 183); (3) this Court's corresponding Order to Show Cause ("OSC") (ECF No. 205); (4) the Joel Parties' motion for sanctions against Defendants/Counter-Claimants ("Motion for Sanctions") (ECF No. 237); and (5) the Joel Parties' request for retention of jurisdiction for their request for declaratory relief regarding Defendants' trademark infringement counterclaim ("Request"). (ECF No. 228.)  For the following reasons, the Court **DISMISSES**

---

[1] Prior to February 5, 2015, all non-discovery matters in this lawsuit were assigned to the Honorable Ronald S.W. Lew.  On February 5, 2015, this case was reassigned to the Honorable S. James Otero for all further proceedings. (ECF No. 126.)  The term "the Court" is used to refer to adjudicatory actions taken by either Judge Lew or Judge Otero.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 13-05866 SJO (PJWx)</u>　　　DATE: <u>July 13, 2015</u>

Defendants' copyright infringement claim for failure to state a claim, **REMANDS** the parties' remaining claims to the Superior Court for the County of Los Angeles, **DENIES** the Motion for Sanctions, **DECLINES TO ADOPT** the Report, and **DENIES** the Joel Parties' Request.

I.　FACTUAL AND PROCEDURAL BACKGROUND

　A.　The Matters Before the Court

On April 27, 2015, Counter-Defendants the Joel Parties raised the issue of subject matter jurisdiction in the reply brief for their motion for summary judgment, arguing that the copyright infringement counterclaim asserted by Defendants and Counter-Claimants the Estate of Richard C. Corrales ("Corrales Estate" or the "Estate"), Sandra Corrales Favila ("Favila"), and Motion Graphix, Inc. ("MGI") (collectively, "Counter-Claimants," "Defendants," or the "Corrales Parties") does not lie because it was brought against a co-owner of the copyright. (*See generally* Reply, ECF No. 183.) On May 19, 2015, the Court ordered Counter-Defendants to show cause why: (1) their cause of action for copyright infringement should not be dismissed for failure to state a claim; and (2) the parties' remaining claims should not be remanded to the Superior Court for the County of Los Angeles ("Superior Court"). (*See generally* OSC, ECF No. 205.) The Joel Parties subsequently filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure against Defendants in connection with Defendants' opposition to the Joel Parties' attack on subject matter jurisdiction. (*See generally* Mot. for Sanctions, ECF No. 237.)

On May 5, 2015, Magistrate Judge Walsh issued a Report and Recommendation in response to Defendants' motion for sanctions against Plaintiff and Counter-Defendant Moofly ("Plaintiff" or "Moofly"), as well as Counter-Defendants Raleigh Souther ("Souther"), and Helena Pasquarella ("Pasquarella") (collectively, with the Joel Parties, "Counter-Defendants") for failure to comply with court discovery orders. (*See generally* R&R, ECF No. 196.) Judge Walsh's Report documented Plaintiff and Counter-Defendants' repeated violation of court orders and refusal to modify conduct even in the face of sanctions. (R&R 2-5.) Based on this conduct, the Report recommended that this Court: (1) dismiss Plaintiff's First Amended Complaint with prejudice; (2) bar Moofly from introducing evidence in support of its claims or defenses; and (3) direct that issues addressed in Defendants' interrogatories be established in Defendants' favor. (R&R 5-8.) Moofly and Pasquarella objected to the Report within the time allotted by Judge Walsh. (*See generally* Objections to [R&R] ("Objections"), ECF No. 235; *see also* ECF No. 236.)

　B.　General Factual and Procedural Background

This Court's OSC details the procedural posture of the various parties involved in this litigation. (*See* OSC 1-7.) Accordingly, a full repetition of the record is unnecessary here. In brief, Plaintiff and Counter-Defendant Moofly brought suit against the Corrales Estate, which is being

CASE NO.:  CV 13-05866 SJO (PJWx)                    DATE:  July 13, 2015

administered by decedent Richard C. Corrales' ("Corrales") sister, Defendant and Counter-Claimant Favila, in the Superior Court for the County of Los Angeles on January 24, 2013. In the operative complaint, Plaintiff argues that Defendants interfered with Plaintiff's business by sending a letter to one of Plaintiff's clients warning this client that Plaintiff was infringing on Defendants' intellectual property and that any clients of Plaintiff may become liable for damages. Thus, Plaintiff brought four state-law causes of action against Defendants for: (1) intentional interference with prospective economic advantage ([Defs.'] Lodging of Pleadings from Super. Ct. File 49-63 ("FAC") ¶¶ 17-28, ECF No. 2); (2) intentional interference with present contractual relations (FAC ¶¶ 29-36); and (3-4) two claims for unfair competition pursuant to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (FAC ¶¶ 37-55.)

Defendants filed several counterclaims against Moofly and numerous Counter-Defendants. (*See generally* Second Am. Countercl. ("SACC") ¶ 5, ECF No. 86.) According to Defendants, Counter-Defendants Souther and his spouse Pasquarella are members, managers, or officers of Moofly, as well as officers, directors, or shareholders of Counter-Defendant Get Flipped, Inc. ("GFI"). (SACC ¶¶ 5-6.) Additionally, Counter-Defendants Joel and Joel Media Group performed services related to GFI's website. (*See* SACC ¶¶ 7-8, 44, 50.) Overall, Defendants allege that Plaintiff and Counter-Defendants have infringed on the intellectual property of MGI, of which the Estate claims to be a 51% shareholder. (SACC ¶¶ 3, 73-97.) Defendants' countersuit is comprised of three federal causes of action and six state-law based causes of action for: (1) fraudulent transfer (SACC ¶¶ 64-67); (2) conversion (SACC ¶¶ 68-72); (3) federal copyright infringement (SACC ¶¶ 73-83); (4) federal trademark infringement (SACC ¶¶ 84-97); (5) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (SACC ¶¶ 98-101); (6) unfair competition under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (SACC ¶¶ 102-04); (7) unfair competition under California common law (SACC ¶¶ 105-07); (8) unjust enrichment (SACC ¶¶ 108-10); and (9) injunctive relief. (SACC ¶¶ 111-13.)

Defendants removed this suit to federal court on the basis of their copyright counterclaim on August 12, 2013. (*See generally* Notice of Removal, ECF No. 1.) With some misgivings, this Court approved that removal. (*See generally* Order Discharging Order to Show Cause ("Discharge Order"), ECF No. 27.)[2] The Court also elected to exercise supplemental jurisdiction over causes

---

[2]  While the well-pleaded complaint rule generally precludes removal based on a defendant's federal defense or counterclaim, 28 U.S.C. § 1338 provides that "[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to . . . copyrights." 28 U.S.C. § 1338. Similarly, 28 U.S.C. § 1454(a) states that "[a] civil action in which any party asserts a claim for relief arising under any Act of Congress relating to . . . copyrights may be removed to the district court of the United

CASE NO.: CV 13-05866 SJO (PJWx)　　　DATE: July 13, 2015

of action related to the copyright claim, as well as Defendants' trademark infringement claim. (Discharge Order 15-19.) Counter-Defendants have alleged that the copyright claim cannot lie and that therefore this Court should not exercise jurisdiction over the remaining state-law claims. (*See generally* Reply; Joel Parties' Reply to Corrales Parties' Resp. to [OSC], ECF No. 214.) However, the Joel Parties have requested that in the event this Court dismisses the copyright counterclaim, this Court retain jurisdiction over the Joel Parties' request for declaratory relief in relation to the counterclaim for federal trademark infringement. (*See generally* Req.)

　　C.　Copyright Counterclaim

In the operative counterclaim, Counter-Claimants allege the following. The Corrales Estate is a 51% shareholder of MGI, a California corporation in dissolution that is engaged in a wind-up of its affairs. (SACC ¶¶ 2-3.) In February 2000, Corrales and Souther founded MGI, with Corrales as the 51% majority shareholder and Souther as the 49% minority shareholder. (SACC ¶ 13.) Between 2001 and 2007, Corrales, Souther, and MGI obtained various patents, copyrights, and trademarks related to lenticular software, which MGI used in its business. (SACC ¶¶ 14-20.) In January 2005, Corrales and Souther began having disagreements over their respective roles at MGI. (SACC ¶ 21.) Counter-Claimants allege that Souther began exploiting MGI's copyrights and trademarks and doing business under the name "Get Flipped" even though Get Flipped was a registered trademark belonging to MGI. (SACC ¶ 22.) Souther also caused Get Flipped to register a copyright for the website Get Flipped on August 1, 2005. (SACC ¶ 23.)

Corrales died on November 7, 2005, and his sister, Favila, was appointed executor of the Corrales Estate on January 9, 2007. (SACC ¶ 24.) In February and March 2006, Souther decided to dissolve MGI and transfer its assets, including intellectual property assets such as copyrights and trademarks ("IP Assets"), to GFI. (SACC ¶¶ 25-26.) Souther also caused MGI to sell all of its assets to GFI without the consent of GFI's majority shareholder, the Corrales Estate,[3] in February

---

States for the district and division embracing the place where the action is pending." Courts interpreting these statutes have also concluded that 28 U.S.C. § 1454 "permits removal of copyright or patent counterclaims." *See Acorn Prods., LLC v. Tjeknavorian,* 33 F. Supp. 3d 175, 182 n.3 (E.D.N.Y. 2014) (collecting cases). Thus, Judge Lew concluded that although Plaintiff's complaint pleaded exclusively state law claims, removal to this Court was appropriate under 28 U.S.C. §§ 1338, 1454(a) based on Counter-Claimants' copyright infringement claim. (*See* Discharge Order 9-14.)

[3]　According to Counter-Claimants, by virtue of Richard C. Corrales' death, his 51% shareholder interest in MGI passed to the Corrales Estate. (SACC ¶ 25.)

CASE NO.: CV 13-05866 SJO (PJWx)         DATE: July 13, 2015

2007. (SACC ¶ 27.)  The IP Assets, including, among other things, MGI's copyrights, trademarks, lenticular software, and other assets, were sold for no consideration. (SACC ¶ 31.)

On October 30, 2007, the Corrales Estate brought suit against Souther and GFI in state court alleging, among other things, claims for conversion, fraud, breach of fiduciary duty, and breach of contract (the "State Court Lawsuit" or "State Court Litigation"). (SACC ¶¶ 31, 36.) Following a bench trial that took place on various dates in 2009 and 2010, on November 22, 2010, the state court ("State Court" or "Trial Court") entered a judgment finding that Souther and GFI were liable for the wrongful purported dissolution of MGI and the wrongful transfer of MGI's assets (the "State Court Judgment" or "Judgment"). (SACC ¶ 37.) The Judgment awarded the Corrales Estate monetary relief of more than $4 million, as well as a constructive trust[4] comprised of "all trademarks, copyrights, patents and domain names related to [MGI's lenticular software]." (SACC ¶¶ 38-39.)

On appeal, the Court of Appeal of the State of California ("Appellate Court") altered the relief granted by the State Court on two occasions in orders issued October 23, 2012, and January 21, 2015. (*See generally* Req. for Judicial Notice in Supp. of [Counter-Claimants' Mot. for Summ. J.] ("RJN") ¶¶ 3, 5, ECF No. 140, Exs. C ("Appellate Order"), E ("Second Appellate Order"), ECF Nos. 140-4, 140-5.)[5] Pursuant to the Second Appellate Order, the Appellate Court modified the Trial Court's amended judgment order ("Amended Judgment") "to reflect that the constructive trust imposed in favor of the [Corrales] Estate and against Souther and [GFI] covers an undivided **51 percent (not 100 percent)** of all the assets of [MGI] fraudulently transferred to [GFI]." (Second Appellate Order 8) (emphasis added).

In their Reply, the Joel Parties maintained that Counter-Claimants' copyright infringement claim does not lie because: (1) the Corrales Parties are only 51% owners, with Souther being the 49% owner, of the IP Assets that were the subject of the parties' State Court Litigation, including the

---

[4]  Under California law, "[w]here a breach of fiduciary duty occurs, a variety of equitable remedies are available, including imposition of a constructive trust." *Meister v. Mensinger,* 230 Cal. App. 4th 381, 396 (2014) (quoting *Hicks v. Clayton* 67 Cal. App. 3d 251, 264 (1977)) (internal quotation marks omitted).

[5]  "[Courts] 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992) (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)).  Because they directly relate to the parties' IP Assets and intellectual property rights in this litigation, the Court takes judicial notice of the judgments and orders attached to Counter-Claimants' RJN, including the First and Second Appellate Orders.

| | |
|---|---|
| **CASE NO.:** CV 13-05866 SJO (PJWx) | **DATE:** July 13, 2015 |

copyrighted work at issue in this lawsuit; and (2) a copyright owner cannot bring a claim for copyright infringement against a co-owner. (Reply 1-2.) Counter-Claimants concede that copyright infringement claims do not lie against co-owners, but maintain that the Joel Parties' jurisdictional argument lacks merit because: (1) the Joel Parties have not shown that the Corrales Parties and Souther are co-owners of the copyright in the GFI website ("GFI Website" or "Website"); (2) the Joel Parties are not co-owners of the Website;[6] and (3) Judge Lew previously considered the jurisdictional issues in the Discharge Order and found that the Court had exclusive jurisdiction over Counter-Claimants' copyright counterclaim and original or supplemental jurisdiction over all but one of the parties' claims and counterclaims. (Corrales Parties' Sur-Reply to [Reply], ECF No. 199.)[7] The Court found Counter-Claimants' arguments to be unpersuasive and ordered Counter-Claimants to show cause why their copyright claim should not be dismissed and the remaining claims remanded. (*See generally* OSC.)

II.  DISCUSSION

  A.  Legal Standards

Lack of subject matter jurisdiction may be raised by the Court or the parties at any time, including after a decision on the merits. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also, e.g., Henderson ex rel. Henderson v. Shinseki,* 562 U.S. 428, 434-35 (2011) (holding that "[o]bjections to subject-matter jurisdiction . . . may be raised at any time" including after a party loses at trial); *Kuntz v. Lamar Corp.,* 385 F.3d 1177, 1181 (9th Cir. 2004) ("[C]hallenges to a federal court's subject matter jurisdiction cannot be waived and may be raised at any time.") (citations omitted).

As this Court made clear in the OSC, Defendants' argument for federal jurisdiction hinges on their copyright infringement counterclaim. (OSC 5-6.) Further, the Court previously noted that it was disinclined to exercise pendant jurisdiction over an action comprising several state law claims and a non-exclusive trademark claim. (OSC 10-11.) A court may exercise its discretion and decline to exercise supplemental jurisdiction if: (1) "the claim substantially predominates over the claim

---

[6]  In the OSC, this Court noted that Counter-Claimants seemed to ignore the fact that Souther, if found to be a co-owner, could grant a license for the Joel Parties to use the copyrighted works. (OSC 7 n.10.)

[7]  While the Court does not agree with Counter-Claimants' contentions for the reasons explained below, these arguments are not sanctionable. *See, e.g., Hudson v. Moore Bus. Forms, Inc.*, 898 F.2d 684, 685-86 (stating that claims that are plausible are not sanctionable). Accordingly, the Joel Parties' Motion for Sanctions against the Corrales Parties is **DENIED**.

Case 2:13-cv-05866-SJO-PJW Document 249 Filed 07/13/15 Page 7 of 13 Page ID #:6303

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 13-05866 SJO (PJWx)          DATE: July 13, 2015

or claims over which the district court has original jurisdiction"; or (2) "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(2)-(3).  The Court's discretion under 28 U.S.C. § 1367(c) "is informed by the *Gibbs* values of economy, convenience, fairness, and comity."  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (internal quotation marks omitted).  These factors "usually will favor a decision to relinquish jurisdiction when 'state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought.'"  *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).  This is in part because "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  *Gibbs,* 383 U.S. at 726 (footnote omitted).

> B.     Ownership of the Copyrights at Issue

Counter-Claimants argue that after reading the Second Appellate Order, "the only two possible conclusions are that MGI owns 100% of the [IP Assets]," including the copyrights, or that "the Estate owns 51% of the assets and GFI owns the remaining 49%."  (Corrales Parties' Resp. to [OSC] ("Defs.' Resp.") 5, ECF No. 206.)  Counter-Claimants urge the Court to adopt the former reading, but also assert that under either theory Moofly, Pasquarella, and Souther own none of the copyrights at issue.  (Defs.' Resp. 5-10.)  The Court disagrees with each of these contentions.

It is unclear how Counter-Claimants could conclude that **MGI** owns 100% of the assets at issue. It is worth noting that the Estate pursued direct claims in the State Court action, rather than derivative claims on MGI's behalf.  (*See* Appellate Order 17-22.)  While it is true that the Trial Court found the asset transfer from MGI to GFI to be fraudulent, the Trial Court did not imply that the assets simply reverted to MGI.  (*See generally* Appellate Order; Am. J, ECF No. 140-5.) Instead the Trial Court placed the entirety of the assets in a constructive trust for the benefit of the Estate.  (Second Appellate Order 7) (noting the award of 100% of assets to the Estate in both of the Trial Court's orders).  These assets were to be delivered by Souther and GFI to the Estate, not to MGI.  (Am. J. 3-4.)

Moreover, it is clear that even if this Court were to conceive of the constructive trust as a part of MGI, the corporate entity would not have 100% of the assets at issue. The Appellate Court held that the constructive trust created by the Trial Court "could properly apply only to 51 percent of the [IP A]ssets improperly transferred by Souther from [MGI] to [GFI]."  (Second Appellate Order 7.) Thus, the Appellate Court  modified the Trial Court's judgment "to reflect that the constructive trust imposed in favor of the Estate and against Souther and [GFI] cover[ed] an undivided 51 percent (not 100 percent) of all the [IP A]ssets of [MGI] fraudulently transferred to [GFI]."  (Appellate Order 8.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 13-05866 SJO (PJWx)        DATE: July 13, 2015

As indicated, Counter-Claimants insist that the **only** other reading of the Second Appellate Order would grant the Estate 51% of the assets, with the remaining 49% held by GFI.[8] (Defs.' Resp. 5) (emphasis added). Counter-Claimants argue that if the Court adopts this second reading, the Court must conclude that Souther and the other Counter-Defendants have no ownership of or license to the IP Assets at issue. (Defs.' Resp. 5-10.) This conclusion simply does not follow.

Counter-Claimaints' own pleadings allege that each of the Counter-Defendants is an "agent, representative, partner, . . . and/or alter ego of the other." (SACC ¶ 10.) If the Court credits this allegation, then logically GFI's co-ownership of the copyrights at issue would be enjoyed by its agents or alter-egos.[9] The Estate similarly alleges that Souther, individually and "in his capacity as CEO of GFI," migrated the content of GFI's website to another company. (SACC ¶¶ 50, 52.) Moreover, Counter-Claimants maintain that Souther, GFI, and the other Counter-Defendants have formed Moofly "for the purposes of continuing the very same business, and using and infringing

---

[8] The Court disagrees that this is the only possible alternative reading of the Second Appellate Order. As explained above, the Trial Court held the transfer of assets from MGI to GFI to be fraudulent and awarded the entirety of the assets to the Estate. (*See generally* Am. J.) Thereafter, the Appellate Court reduced this award to 51% of the IP Assets on the basis that the Trial Court had essentially ignored Souther's ownership interest in MGI. (*See* Second Appellate Order 7-8.) Thus, an obvious third reading of the state courts' decisions is that Souther's 49% interest in the IP Assets ultimately remained with him. Overall, whether Souther (1) personally co-owned the copyrights as a result of the Appellate Court's decision in the Second Appellate Order or (2) co-owned the copyrights by virtue of his position as majority share-holder and Chief Executive Officer of GFI, it is clear that the state court decisions, particularly the final decision rendered by the Appellate Court, did not obliterate Souther's co-ownership of the copyrights.

[9] Souther claims that he granted a non-exclusive license to use the copyrights to all Counter-Defendants. ([Souther] Resp. to [OSC] 3, ECF No. 214.) Souther, as a co-owner, would have the ability to grant licenses to third parties such as Moofly and the Joel Parties without the Estate's consent. *Melanie Howard Music, Inc. v. Warner Bros. Records, Inc.*, No. CV 08-00979, 2009 WL 3784611, at *8 (M.D. Tenn. Nov. 10, 2009) ("'[A] joint owner of a copyright . . . may grant licenses to a jointly-owned work without the consent of the other joint owners,' and the licensee may exploit that work, therefore, without the explicit permission of other co-owners of the work, although the licensor may be required to account to the other co-owners of the copyright.") (collecting cases); *Geshwind v. Garrick*, 734 F. Supp. 644, 651 (S.D.N.Y. 1990), *vacated in part on other grounds by* 738 F. Supp. 792 (S.D.N.Y. 1990) ("A joint owner of a work does not need the permission of his joint owner to use or license the work, and neither he nor a party to whom he gives permission to use the work can be held liable to the other owner for infringement.") (citation omitted).

Case 2:13-cv-05866-SJO-PJW Document 249 Filed 07/13/15 Page 9 of 13 Page ID #:6305

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 13-05866 SJO (PJWx)    DATE: July 13, 2015

upon the very same . . . copyrights." (See SACC ¶¶ 50, 60.) Because GFI co-owned the copyrights at issue at the time of the alleged infringement, the explicit cooperation of Counter-Defendants, as pleaded by the Corrales Parties, strongly militates in favor of a finding that Counter-Defendants received permission to use those copyrights from a co-owner. See Falcon Enters. Inc. v. Publishers Serv., Inc., 438 F. App'x 579, 580 (9th Cir. 2011); Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 558 (9th Cir. 1990) ("[A] nonexclusive license may be granted orally, or may even be implied from conduct.") (citation and quotation marks omitted).

Alternatively, the Estate argues that Moofly, Souther, and Pasquarella are estopped from raising a defense based on copyright ownership rights because those Counter-Defendants have not previously pleaded an affirmative defense of implied license.[10] (Defs.' Resp. 12.) This argument misunderstands the posture of the parties. The Court issued the OSC after learning of the Second Appellate Order, which clarified the ownership interests of the copyrights at issue. Thus, Counter-Defendants are not estopped from asserting, and the Court is not barred from considering, the disposition of the copyrights in relation to the instant suit.

The Estate further argues that Souther has abandoned any claim to the copyrights. (Defs.' Resp. 13.) The Estate claims that this abandonment was manifested through Souther's statements that he did not own the copyrights and by the "affirmative act" of turning over the copyright registrations to the Estate. (Defs.' Resp. 8.) However, Souther's understanding of, and possible compliance with,[11] two since-overruled Trial Court judgments cannot be fairly described as abandonment. "[A]bandonment of copyright 'occurs only if there is an intent by the copyright proprietor to surrender rights in his work.'" A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1026 (9th Cir. 2001) (citation omitted); see, e.g., Micro Star v. Formgen, Inc., 154 F.3d 1107, 1114 (9th Cir. 1998). Here, the Trial Court's orders incorrectly informed Souther that he had no rights to the works on two occasions. (See Second Appellate Order 7.) That disposition of the parties' copyrights has since been corrected by the Second Appellate Order issued in January 2015. (Second Appellate Order 7-8.)

Based on the foregoing, the Court holds the following. First, the Second Appellate Order, on its face, awards 49% of the copyrights at issue to a Counter-Defendant. Second, by Defendants' own theory of the case, all Counter-Defendants have cooperated to exploit that intellectual property.

---

[10] This Court finds this argument to be misplaced, as estoppel assumes misleading conduct on the part of the adverse party. See Heckler v. Cmty. Health Servs., 467 U.S. 51, 59 (1984). Here, determining the ownership of the copyrights at issue was such a convoluted and confusing process that it required two separate Appellate Orders to resolve.

[11] Indeed, "[t]he Estate disputes that Souther complied with the State Court Judgment." (Defs.' Resp. 8 n.5.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 13-05866 SJO (PJWx)          **DATE:** July 13, 2015

Third, the Court is not barred from considering the import of this co-ownership nor are parties estopped from responding to this Court's concerns regarding co-ownership. Finally, Souther has not clearly evinced an intent to abandon any such co-ownership.

      C.      <u>Viability of Defendants' Copyright Counterclaim</u>

As this Court noted in the OSC, it is well-established that "[a] co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright." *Oddo v. Ries,* 743 F.2d 630, 632-33 (9th Cir. 1984) (citing *Richmond v. Weiner*, 353 F.2d 41, 46 (9th Cir. 1965); *Picture Music, Inc. v. Bourne, Inc.*, 314 F. Supp. 640, 646 (S.D.N.Y. 1970)); *see also Zuill v. Shanahan,* 80 F.3d 1366, 1369 (9th Cir. 1996); *Dead Kennedys v. Biafra,* 37 F. Supp. 2d 1151, 1153 (N.D. Cal. 1999). This is because "each co-owner has an independent right to use or license the use of the copyright." *Oddo,* 743 F.2d at 633 (citations omitted). Further, while "[a] co-owner of a copyright must account to other co-owners for any profits he earns from licensing or use of the copyright," *id.*, "his duty to account to other co-owners for profits arises from equitable doctrines relating unjust enrichment and general principles of co-ownership, and does not amount to an infringement claim." *Zuill,* 80 F.3d at 1369 (citation omitted). Thus, "[a]n action for an accounting or determination of ownership as between alleged co-owners is **founded in state law** and does not arise under the copyright laws." *Dead Kennedys,* 37 F. Supp. 2d at 1153 (citing *Oddo,* 743 F.2d at 633) (emphasis added).

Here, the Appellate Court held that the constructive trust created by the Trial Court "could properly apply only to 51 percent of the [IP A]ssets improperly transferred by Souther from [MGI] to [GFI]." (Second Appellate Order 7.) As indicated, the Estate is only a co-owner of the copyrights at issue, and so it is barred from bringing a copyright infringement action against another co-owner. *See Oddo,* 743 F.2d at 632-33; *Zuill,* 80 F.3d at 1369; *Dead Kennedys,* 37 F. Supp. 2d at 1153. Further, Souther, as co-owner of the works, has the "independent right to use or license the use of the copyright," *Oddo,* 743 F.2d at 633, limited only by the Estate's state law-based right to an accounting. *Zuill,* 80 F.3d at 1369; *Dead Kennedys,* 37 F. Supp. 2d at 1153.

Based on the foregoing, the Court **DISMISSES** Defendants' copyright infringement counterclaim for failure to state a claim.

      D.      <u>Jurisdiction over Remaining Claims</u>

In light of the dismissal of the copyright counterclaim, this Court turns to the question of whether to retain jurisdiction over the remaining claims. Pendant jurisdiction is discretionary. *See* 28 U.S.C. § 1367(c)*; Gibbs,* 383 U.S. at 726. Further, as previously stated, where state issues "substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 13-05866 SJO (PJWx)</u>                DATE: <u>July 13, 2015</u>

comprehensiveness of the remedy sought" such actions are best adjudicated by state tribunals. *Gibbs,* 383 U.S. at 726.

Here, several factors militate in favor of relinquishing jurisdiction. The great majority of the remaining claims, including each of the four claims asserted in Plaintiff's FAC and four of Counter-Claimants' counterclaims,[12] arise under California Law. (*See* FAC ¶¶ 17-49; SACC ¶¶ 64-72, 102-110.) The Superior Court, with its greater expertise and understanding of the applicable law, will better handle these issues and thereby "promote justice between the parties." *Gibbs,* 383 U.S. at 726.

Additionally, to the extent that Counter-Claimants' federal counterclaims remain viable, their resolution will likely turn on the interpretation of the Second Appellate Order's division of intellectual property at issue. (*See* Second Appellate Order 7.) While co-ownership of copyright is common, co-owned trademarks, especially between antagonistic parties in potential competition, are rare. *See, e.g.*, *Durango Herald, Inc. v. Riddle*, 719 F. Supp. 941, 951-53 (D. Colo. 1988) (discussing difficulties attendant to joint marks and ultimately enjoining independent use of joint mark); *see also Abdul Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 412 (9th Cir. 1996) (noting the source-identification function of trademark). The Superior Court is better positioned to determine if the Appellate Court intended to create a joint mark. Moreover, remedies against a trademark co-owner may be fairly limited. *See Durango*, 714 F. Supp. at 952-53 (mutual negative injunction). For reasons of judicial economy, convenience, fairness, and comity, this Court elects to relinquish jurisdiction over the parties' eight remaining claims and **REMANDS** those claims to the Superior Court.

    E    <u>Jurisdiction over Declarative Relief from Trademark Counterclaim</u>

The Joel Parties request that the Court retain supplemental jurisdiction over their action seeking declaratory relief as to the Corrales Parties' trademark infringement claim. (*See generally* Req.) However, as previously indicated in this litigation (*see* Discharge Order 15), the Court is not inclined to disrupt judicial economy or risk inconsistent results by retaining this claim while remanding the remaining claims to the Superior Court. *See Gibbs*, 383 U.S. at 726. Accordingly, the Court **DENIES** the Joel Parties' Request as to Counter-Defendants' trademark infringement claim.

    F.    <u>The Report and Recommendation</u>

---

[12] Only two of the counterclaims, unfair competition under the Lanham Act (SACC ¶¶ 98-101) and federal trademark infringement (SACC ¶¶ 84-97), arise under federal law. Neither of these claims are exclusive to this Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 13-05866 SJO (PJWx)	DATE: July 13, 2015

On May 5, 2015, Magistrate Judge Walsh issued a thorough and well-reasoned Report and Recommendation detailing Plaintiff and Counter-Defendants' repeated failure to comply with discovery orders. (*See generally* R&R.) The Report recommended that this Court: (1) dismiss Moofly's FAC with prejudice; (2) bar Moofly from introducing evidence in support of its claims or defenses; and (3) direct that the issues addressed in Defendants' interrogatories be established in Defendants' favor. (R&R 1, 8.) Moofly and Pasquarella timely-filed their Objections to the Report on June 12, 2015. (*See generally* Objections.) In the Objections, Moofly and Pasquarella argue, among other things, that the Report: (1) was premised on an overbroad reading of Rule 41 of the Federal Rules of Civil Procedure ("Rule 41"); (2) ignored Moofly and Pasquarella's previous efforts to comply with discovery orders; (3) was overreaching because there was no finding of bad faith on the part of Moofly; and (4) was overly punitive because it did not adequately consider alternative remedies. (Objections 2.) For the following reasons, the Court finds the parties' arguments against sanctions unpersuasive.

    1.    <u>Analysis of the Report</u>

As an initial matter, the parties' arguments regarding Rule 41 (*see* Objections 3-4), which permits involuntary dismissal of an action due to the plaintiff's failure to prosecute or comply with a court order, Fed. R. Civ. P. 41(b), are misplaced. Here, Moofly's willingness to prosecute the case is not at issue. Instead, Judge Walsh, citing Federal Rule of Civil Procedure 37(b) and *Porter v. Martinez*, 941 F.2d 732, 733 (9th Cir. 1991), determined that dismissal of the FAC was justified by Moofly's failure to comply with court orders. (R&R 5-6.)

Moreover, there can be little doubt that Moofly, Souther, and Pasquarella failed to abide by rules regarding discovery throughout this action. Here, Moofly: (1) failed to provide voluntary disclosures and was subsequently sanctioned $3000 (ECF No. 55); (2) failed to respond to Defendants' interrogatories, was sanctioned $5000 (ECF No. 122), then subsequently failed to comply with the attendant court order regarding interrogatory responses (*see* ECF No. 125 5); and (3) failed to appear for the hearing on the motion to compel necessitated by Moofly's repeated defiance. (ECF No. 135). Based on the Court's independent assessment of the record, the Court has no difficulty detecting the very same pattern of non-compliance noted by Judge Walsh.

The parties' suggestion that Judge Walsh did not consider the imposition of lessor sanctions is baseless; he had in fact repeatedly imposed monetary sanctions in a futile effort to correct Moofly, Souther, and Pasquerella's behavior. (R&R 7) (noting previous sanctions imposed in the total amount of $13,250 and Moofly's failure to pay same).[13] For the same reason, Moofly's argument

---

[13] The true thrust of Moofly's objection to the Report is that Souther, who is representing himself, is solely responsible for these delays and non-responses. (Objections 4-5, 9.) However, the record shows that even after Souther elected to proceed *pro se* (*see* ECF

JS-6

Case 2:13-cv-05866-SJO-PJW Document 249 Filed 07/13/15 Page 13 of 13 Page ID #:6309

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 13-05866 SJO (PJWx)          DATE: July 13, 2015

against a finding of bad faith is deficient. It is well settled that "[d]isobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994) (citing *Henry v. Gill Indus.*, 983 F.2d 943, 948 (9th Cir. 1993)). Accordingly, the Court is unpersuaded by Moofly and Pasquarella's attempts to attribute their repeated refusal to obey court orders to forces outside of their control.

    2.    Conclusion

The Court reviews *de novo* any objection made to a magistrate judge's recommendation. 28 U.S.C. § 636(b)(1). For the aforementioned reasons, the Court is persuaded that the conclusions and suggested remedies laid out in the Report are well-supported by the record. However, the Court is mindful that the Superior Court may have a preferred method of handling the entirety of the remanded claims. Accordingly, in the interests of comity and deference, and in those interests **only**, the Court **DECLINES TO ADOPT** the sanctions laid out in the Report and Recommendation.

///
///

III.    RULINGS

For the aforementioned reasons, the Court **DENIES** the Motion for Sanctions, **DECLINES TO ADOPT** the Report, and **DENIES** the Joel Parties' Request regarding declaratory relief for the trademark counterclaim. Additionally, the Court **DISMISSES** Defendants' copyright infringement claim for failure to state a claim and **REMANDS** the parties' remaining claims to the Superior Court for the County of Los Angeles.

This matter shall close.

IT IS SO ORDERED.

---

No. 107), Moofly's counsel has at various points improperly conducted depositions at Souther's request and purported to represent Souther in pleadings addressed to the Court. (*See* R&R 2-3.) Additionally, at least two rounds of sanctions concerning Moofly's failure to comply occurred after Souther's purported departure from the Moofly camp. (*See* ECF Nos. 122, 136.) Thus, this argument is unavailing.